Good morning, Your Honors, and may it please the Court. My name is Hunter Armour from Pepperdine Law School, and I represent Plaintiff Appellant Mr. Ellis. At this time, I would like to reserve four minutes of my time for rebuttal from my co-counsel, Allison Mather. Mr. Ellis was branded a sex offender, restricted in his ability to earn good time credits, and prevented from holding his kids' hands. But Mr. Ellis was never tried, let alone convicted, of a sex offense. Instead, prison officials labeled him a sex offender, based on double hearsay contained within two police reports. Mr. Ellis stated a viable claim that he did not receive adequate process before these important liberty interests were deprived. But the District Court screened and dismissed his complaint at the screening stage, before there was any factual development of the record, or before the state was even allowed or required to justify its position. This is not how a pro se applicant should be treated. We therefore ask that this Court reverse the District Court so that these important issues can be litigated. At minimum, Mr. Ellis should be allowed to amend his complaint. Isn't the R-suffix classification simply a prison classification and not a liberty right that he has an interest in? Your Honor, while the R-suffix is just a classification, it comes with impacts on his liberty. As a result of the R-suffix, Mr. Ellis was deprived from being able to have contact visits with his children. Additionally, it changed his work custody designation, which prevents him from being able to earn good time credits at the same rate as other inmates. But is there a constitutional right, at least under Ninth Circuit precedent, to have a constitutional right to contact visit with family? Your Honor, while we do believe there is a constitutional right, the main issue is that there is a... Wait, wait, wait, wait. You might believe that, but I guess I'm a little more interested in the case law. What about Ninth Circuit cases, Dunn v. Castro, Gerber v. Hickman, that basically foreclose a constitutional right? Yes, Your Honor. In Gerber v. Hickman, the factual situation was very distinct, as that was a situation involving artificial insemination. The actual holding of the case narrowly addressed that issue. However, the court did address the constitutional issue as well. However, there is a state-created liberty interest in the ability to have contact visits with children. As the Supreme Court established in Sandin v. Conner, the lack of ability to have contact visits with children creates an atypical and significant hardship in relation to the ordinary incidence of prison life. Therefore, the state-created liberty interest requires that there be certain procedural due process protections before this important liberty interest can be taken away. Well, he was given notice, right? He was given notice that he's going to get this suffix, R-suffix classification, and so he was able to challenge it at that time, right? Yes, Your Honor. He was given notice. However, as this court stated in Neal v. Shimoda, before an inmate can be classified as a sex offender, they should be allowed to call witnesses and present documentary evidence on their behalf. Mr. Ellis was not afforded the opportunity to be able to call witnesses in the trial or in the classification hearing. I'm not sure where that is in the record. He wasn't foreclosed from doing that. He could have, couldn't he? No one said you may not do so. Your Honor, it is unclear from the record, which just demonstrates that this should not have been dismissed at the screening stage. However, in conversations with Mr. Ellis, he did state that he was foreclosed from being able to call witnesses on his behalf. Furthermore, this court has stated that in the disciplinary hearing context, that prisoners should ordinarily be allowed, in addition to calling witnesses and presenting documentary evidence, inmates should also be allowed to confront adverse evidence. Here, Mr. Ellis could not meaningfully confront the adverse evidence against him. He was not given the police reports until after the initial classification hearing, which prevented him from making a meaningful defense of his case. Furthermore, he was not allowed to challenge the police officers who wrote the reports or anything else which, so as to prevent him from having meaningful cross-examination or anything else that enabled him to meaningfully confront this case. So I think I need to have you address Neil because if we look at what your argument has been so far, it's that he has been violated, his liberty is impacted by no contact visits and then the classification that has not permitted him to get work, is that what you were saying? Work within the facility, right? In the same way? Yes, Your Honor. Okay, so I agree with Judge McEwen that this court certainly has said that contact visits are not a liberty interest. So if we assume that's not it, we have to look for an injury other than stigmatization because I know he's argued stigma, so it's got to be stigma plus injury. So is the injury then only that he couldn't get this work? Because then is that a liberty interest? Your Honor, under Neil, it's stigma plus an alteration in legal status. If given leave to amend, Mr. Ellis could allege two distinct situations that have altered his legal status. The first being his inability to earn good time credits as a result of his work custody designation, which specifically goes to the duration of his confinement. Additionally, Mr. Ellis believes that the broad discretion of the parole officers would enable them to limit his liberty interest once released from prison in the same way as if he were... I don't think there's jurisdiction at this point for that kind of speculative claim for his release time, is there? Your Honor... That's a highly speculative claim. Your Honor, while that does get to the future, if this were alleged with sufficient factual clarity, it would be something that was certainly impending. And thus, though the injury has not yet occurred, it is impending to the point that it would not be a ripeness issue. Thank you. Do you want to reserve your remaining time for your co-counsel? Yes, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court, Deputy Attorney General Cassandra Shryock on behalf of Appellee Johnson. Prison officials here reasonably impose limited restrictions on Mr. Ellis' visiting privileges based on his arrest history in order to ensure institutional security and the safety of minor visitors. This Court should affirm the decision below for two reasons. First, Mr. Ellis does not have a protected liberty interest in either his custodial classification or in contact visits with minors. And second, even if a liberty interest were implicated, Mr. Ellis received all of the process that he was constitutionally due. First, I believe this Court has noted that Mr. Ellis does not have a protected liberty interest in his custodial classification, which is all that the R-suffix is. The R-suffix affects where Mr. Ellis may be housed. He may only, he is required to be housed in at least a level two facility. There's some argument in the briefs that because he's getting the R-suffix classification while he's incarcerated, that he'll be required to register as a sex offender when he gets out. Is there any automatic link to that classification? No, Your Honor, and that's contrary to law. Penal Code Section 290 expressly outlines who is required to register as a sex offender, and that is someone who is convicted of an enumerated sex offense by a state court, federal court, or military court. And the regulations governing the R-suffix make no mention of sex offender registration, and the request for judicial notice that Appellee Johnson submitted indicates that in the Statement of Reasons that the Department recognizes that an R-suffix would not impose that sort of restriction. And therefore, as Your Honor pointed out, this doesn't fall under Neal v. Shimoda. There is only the classification itself. What about the aggregation of good time credits because he's restricted in terms of where he might be able to work? Two points to that, Your Honor. First, that's an argument that was first raised in Appellant's reply brief, and in Appellant's opening brief, Appellant conceded that the duration of his sentence was not affected by the imposition of the R-suffix. Additionally, in looking at, again, the regulation that outlines what the R-suffix is and what the implications of having an R-suffix affixed are, there's no indication that the work group itself is limited. And as Your Honor pointed out, to the extent that it is, it would be highly speculative. Further, inmates do not have any protected liberty interest in an inmate job while incarcerated. So still, that would be insufficient under Neal. Go ahead. Oh, I'm sorry. I couldn't figure out what work he'd be limited in because if it's just that he can't have contact with minors, what work in the prison would have him in contact with minors? Is there such a position? I'm unclear as to that as well, Your Honor. And as Your Honor points out, Mr. Ellis was limited to non-contact visits with minors, but that was a distinct decision from imposing the R-suffix. The R-suffix was affixed at a California state prison in Los Angeles County, and several months later at California Men's Colony is when the visiting restriction was imposed. And Mr. Ellis, to be clear, is not denied visitation with minors. He is not denied visitation with his minor children. He simply cannot touch minors because within the 18 months before he arrived in CDCR's custody, he was arrested for attempted rape of a minor. And based on that, prison officials reasonably determined that Mr. Ellis posed a risk to the safety of minors in contact visiting. And as the Supreme Court and this Court has noted, prison officials have a valid interest in protecting child visitors from exposure to sexual and other misconduct, which is what prison officials are doing here. Even if this Court were to conclude that Neal v. Shimoda did apply, that somehow the classification plus had been satisfied, Mr. Ellis still received all of the process that he was constitutionally due. Due process requires two minimum elements be met, and those are notice and an opportunity to be heard. And the record before the District Court demonstrated that Mr. Ellis received both of those things. Mr. Ellis received 72 hours written notice before the hearing where the R-suffix was affixed, and he received 72 hours written notice before the hearing where the restrictions on his visiting privileges were limited. Mr. Ellis also received notice in advance of the hearing where the R-suffix was to be imposed of what the committee's intended action was. The record demonstrates that Mr. Ellis attended and participated in both of those hearings. Is there anything in the record that says he was informed that he couldn't bring in witnesses or that he attempted to bring in witnesses that were not allowed to be brought in? No, Your Honor, and the excerpts of record at 15, 16, 21, and 22 are the notes of the chronos generated from those committee hearings, and nowhere in either of those statements is there an indication Mr. Ellis attempted to call witnesses or was precluded. But still, he was not required to have the opportunity to call and cross-examine witnesses. In Neal, the situation was different. In Neal, there, an inmate classified as a sex offender was required to complete a mandatory sex offender treatment program in order to even be eligible for parole. And in that circumstance, this court concluded that it was reasonable that an inmate be permitted to call witnesses. But here, that's not what is at stake. And inmates do not inherently have a liberty interest in not being placed in administrative segregation. Well, wasn't Neal a disciplinary hearing, or am I mistaken? No, Your Honor. Neal v. Shimoda was a hearing in Hawaii when he was coming out of the treatment program. Is that the one? Yes, Your Honor. Okay. So then, and in that case, he was entitled to call people in order to determine whether he had successfully completed the program, right? Yes, Your Honor, and that would be the case if Mr. Ellis were being disciplined, if his part-time credits that he had earned were being taken away, if his eligibility for parole were being limited, then Mr. Ellis would be entitled to call witnesses. Here, that's not the case. It's simply that his visiting restrictions with minors are limited to non-contact. Mr. Ellis can see minors, he can visit with them, he can speak to them, he simply can't touch them. And he can still have contact visits with all other visitors. This simply is not an atypical and significant hardship in prison life. Mr. Ellis receives far more visiting privileges than inmates in administrative segregation would have, and so he cannot meet the atypical and significant hardship prong to show that such a liberty interest were met. And the record was clear that Mr. Ellis received notice, advance written notice, as well as an opportunity to be heard on these issues. Mr. Ellis also is required to have classification committee hearings once a year. So Mr. Ellis can re-raise this issue, he could present new information to a classification committee explaining why this restriction should be lifted. And if the restriction were not lifted, Mr. Ellis still has the opportunity to appeal, which the record shows he did here. Because Mr. Ellis received all of the process that he were constitutionally due, regardless of whether there is a liberty interest implicated. The district court properly screened Mr. Ellis' complaint. He was given two opportunities to cure these defects, he was given two opportunities to plead fact sufficient, even liberally construed, to state a claim. And even after the defects in his original complaint were pointed out to him, he was unable to cure those defects. And therefore, denying further leave to amend was appropriate. For those reasons, we ask that this court affirm. Thank you. Thank you. You have four minutes for rebuttal. Can we put four minutes, please? Good morning, your honors, and may it please the court. My name is Allison Mather, and I also represent the plaintiff appellant, Mr. Ellis. Unless this court has a specific question, I would like to begin by addressing the fact that all of the state's arguments assume facts that are not in a record. We don't have a fully developed record because this was dismissed at the screening stage before Mr. Ellis was given the opportunity to have the record fully developed. And so, because Mr. Ellis is a pro se litigant, the court should bend over backwards to afford him his right to bring his claims forward before the court. I agree with that. However, there's no reason to do that, say, let's take the case of the Eighth Amendment and the claimed right with respect to his classification. All of our case law forecloses that. So, I'm not sure how any amendment would be anything other than futile. Perhaps you can comment on that. Yes, your honor. The Eighth Amendment claim or the other claims that you mentioned that may be foreclosed, if this court sees that as... There are other claims that Mr. Ellis has brought forward and that deal with the due process issues that were mentioned by opposing counsel and my counsel before, that there are liberty interests sufficient to state a claim and that the process afforded was inadequate. Could you help us out then on the due process because I think it's important to focus on that separately from the Eighth Amendment as you have. What's the infirmity in the due process situation here? The infirmity in the due process, your honor, is that Mr. Ellis was branded a sex offender and there are attendant consequences to that, whether they're direct or indirect. It was all based on the same decision with the same evidence. And using that evidence that is inherently infirm as police reports containing double hearsay statements without giving Mr. Ellis the opportunity to call witnesses or confront perhaps even the officer who wrote the reports deprives him of due process. Because it is such a strong stigma, as this court did recognize in Neal, being classified as a sex offender in prison is no small thing. And so to have that in addition to the other consequences, such as loss of contact visitation or the good time credits issue that Mr. Ellis could further flesh out if given leave to amend, that would state a claim that is not futile, your honor. Thank you. Thank you. And so because Mr. Ellis is a pro se litigant, he should be given at minimum leave to amend. He's not asking for leave to amend ad nauseum, simply one second chance. After being appointed counsel, counsel has been able to identify some areas where you could further allege facts to support his claims. And so with that, we submit. Thank you, your honors. Thank you. The case just argued, Ellis v. Johnson is submitted. I would like to thank Pepperdine University Law School for your participation in the pro bono program, to your supervising attorney, Mr. Rosen, and also to Mr. Armour and Ms. Mathers, and also thank the state for its argument as well. Next case for argument, United States v. Valencia Cruz.
judges: Farris, McKeown, Kendall